[Broughton v. Atchison.]

# Broughton v. Atchison.

*Trover for Conversion of Cotton.*

1. *Trover; construction of bill of exceptions.* — Where it may as well be inferred from the testimony that persons were joint contractors in a farming adventure as that they were partners *inter sese*, it will not be presumed that a crop of cotton, an undivided half interest in which was mortgaged by one of them, was partnership property, so as to defeat trover by the mortgagee against a stranger for a conversion.

2. *Trespasser; what questions cannot raise.* — A mere naked trespasser sued by the mortgagee in trover for the conversion of mortgaged property, cannot question the validity of sale by plaintiff of a portion of the mortgaged property, nor complain of the application of the proceeds as between different debts of the mortgagor, nor ask an allowance or deduction of profits on resale of property purchased by mortgagee at his own sale.

APPEAL from Circuit Court of Lowndes.

Tried before Hon. JAMES Q. SMITH.

Jane Atchison, appellee, brought suit and recovered judgment against Broughton, the appellant, in an action of trover, for the conversion of two and a half bales of cotton.

In January, 1871, one J. M. McDonald rented land from plaintiff for a year, for which he agreed to pay three and a half bales of cotton as rent. He told her, at the time, that he and one M. F. Bonham "intended to cultivate the land in partnership." McDonald went into possession and cultivated the land with his own and Bonham's mules, and plaintiff sold some corn to Bonham to feed the mules. In February, 1871, McDonald purchased a horse of plaintiff for the sum of $175, for which he executed his note, and gave a mortgage, to secure it, on the horse and his "undivided half interest in a crop being grown by me on the plantation of said Atchison." The mortgage contained a power of sale after public outcry at Hayneville, upon "giving thirty days' notice by advertisement in the county." About six bales of cotton were raised on the rented land that year, all of which McDonald hauled off at the close of the year, except about four hundred and sixty pounds of lint cotton which plaintiff got on taking possession shortly afterwards, upon McDonald's moving off. Plaintiff got $92 for the lint cotton. She sold the horse at public outcry at Hayneville, after giving thirty days' notice by posting, bidding him in for $66 and afterwards sold him for $100 in 1873. She had expended $30 in caring for the horse, and had received $25 hire for him. Plaintiff testified that she made no appropriation of the proceeds of the lint cotton, either to rent due or to the mortgage debt. Two bales of cotton grown on the rented land were hauled off to the defendant's gin-house and he had them deposited in the railroad warehouse, taking the receipts therefor in his own name, and

[Broughton v. Atchison.]

on demand refused to deliver up the cotton. How Broughton got the cotton, or what claim he had to it, or what he did with it afterwards is not shown. McDonald was dead at the time of the trial. This was all the evidence.

The court charged the jury as follows.: —

1st. " That the lien of the plaintiff entitles her to maintain this action, if the evidence shows that the defendant, without authority from the plaintiff, took the cotton in evidence and converted it to his own use."

2d. " That the sale by plaintiff of the four hundred and sixty pounds of cotton does not authorize the jury to allow the proceeds thereof as a payment on the mortgage debt, but the law will apply the same to the payment of the rent."

3d. " The defendant is only entitled to a credit for the amount of the sale at public auction, less the expenses of the sale."

To the giving of each of these charges the defendant duly excepted; and requested the court to give three written charges which were refused and defendant again excepted. The charges refused asserted : 1st, that the McDonald mortgage did not convey any interest in the cotton which could be enforced in this suit; 2d, that under the mortgage plaintiff was bound to apply the proceeds of the lint cotton to the payment of the mortgage debt, and could not apply it to any other debt without the consent of the mortgagor; 3d, that a sale under the mortgage, notice of which was given by posting only, was invalid.

R. M. WILLIAMSON, for appellant. — 1. The evidence shows that there was a partnership between Bonham and McDonald. The first charge took that question from the jury. If they found the existence of a partnership, their verdict could not have been as directed by the court. Plaintiff, by her mortgage, obtained title to no specific portion of the cotton; it only gave her an equitable interest after payment of debts of the partnership.

2. The second charge given was erroneous, and the same may be said of the refusal to give the second charge requested. Plaintiff, as landlord, had no right to take possession of the lint cotton to enforce her lien. She did have such right under the mortgage, and by that instrument the parties appropriated the mortgaged property to the payment of the mortgage debt. Neither party alone could direct any other appropriation. Dulany v. Dickinson, 12 Ala.; 27 Ala. 445; Hilliard on Mortgages, 469.

3. Buying at her own sale, and then reselling at a profit, plaintiff became accountable for the profits realized. 14 Ala. 147. The sale was void; notice by publication was required; it was given by posting.

WATTS & TROY, *contra*. — 1. The mortgage to an undivided half of the crop gave plaintiff a right to maintain *trover* against every mere trespasser who, like Broughton, converted the mortgaged property. 20 Ala. 212; *Brown* v. *Beason*, 24 Ala. 466; *Parminter* v. *Kelly*, 18 Ala. 466; 27 Ala. 404.

2. The evidence does not necessarily show a partnership: it leaves it doubtful, to say the least of it. The mortgage was made after the renting, and was therefore made subject to the landlord's lien for rent. Plaintiff not having applied the proceeds of the lint cotton to either debt, the law would apply it to the rent. 5 Monroe, 253; *Hamner* v. *Richester*, 2 J. J. Marshall, 146; 2 Rich. (Equity) 63; 27 Ala. 445.

3. No one but the mortgagor can complain of plaintiff's purchasing at her own sale. That sale was valid. *Robinson* v. *Cullum*, 41 Ala. 93. There was no proof that any newspaper was published in the county; the mortgage only required publication; posting was, therefore, sufficient. Broughton is a naked trespasser, and has no concern with the questions attempted to be raised by the charges requested; it was right therefore to refuse them whether they contained correct exposition of the law or not. The charges given, if erroneous in any particular, were too favorable to appellant.

JUDGE, J. — It is contended by the appellant, in effect, that the evidence, as disclosed by the record, shows that there was a partnership between McDonald and Bonham in the cultivation of the land rented by McDonald from the appellee, and that the cotton for the conversion of which this suit was brought, having been grown on the rented premises, was partnership property, and that therefore the action of trover cannot be maintained by the plaintiff.

It was shown by the evidence that McDonald alone made the rent contract with the plaintiff below, and promised to pay the rent, which was to be three and one half bales of lint cotton; but he stated at the time that the land was rented in behalf of himself and Bonham, and that they *intended* to cultivate it in partnership. The evidence showed further, that McDonald and Bonham had worked the land together during the year 1871, the period for which the land had been rented. But there was an entire absence of evidence to prove the terms and conditions of the agreement between them, under which they cultivated the land, and by which it might be seen whether or not a partnership had been formed. We do not think it a legitimate inference, from the evidence, that a strict partnership had been formed between the parties. The evidence may as well authorize the conclusion that they were only contractors in a joint farming adventure; and this con-

[Dudley v. Linn.]

struction harmonizes with the ·rule that the bill of exceptions is to be construed most strongly against the party excepting.

When the law-day of the mortgage had passed, the plaintiff became invested with the legal title to that portion of the crop covered by the mortgage, and could maintain trover against the defendant if he had been guilty of an illegal conversion of any part of it.

But how did the defendant stand ? No evidence was offered by him to show how he acquired the possession of the cotton, nor did he make any attempt to connect his possession with an outstanding title in another. From aught that appears in the record, he stood before the court in the attitude of a naked trespasser. Thus standing, he had no right to make any question in the court below as to the proper application of the money derived from the sale of any of the mortgaged property, nor to contend for an allowance to him of any profit resulting from the sale of the horse by the plaintiff after she had purchased him at the mortgage sale, nor to make objection to the mode in which the horse had been advertised for sale under the mortgage. If these questions, or any of them, could be made at all, they could only be made by McDonald, or those standing in his stead or holding under him.

It results that there is no error in the record of which the appellant can complain, and that the judgment of the circuit court must be affirmed.