## PAUL DIRKS *vs.* JACOB HUMBIRD.

*Exceptions to a Sale of Mortgaged property by the Purchaser of the Equity of redemption—Improper objections by Exceptant—Act which does not constitute a Wrongful conversion by a Mortgagee of the Mortgaged property—Marshalling of securities in Equity—What the Purchaser of the Equity of Redemption may, and may not, rightfully claim to have credited on the Mortgage debt—Expense proper to be allowed the Mortgagee.*

S. on the 9th of June, 1877, executed a mortgage, conveying all his real estate, and certain personal property, consisting of horses, cattle, farming utensils, &c., to H., to secure a debt of $1400. The mortgaged property remained in the possession of the mortgagor until it was sold by the mortgagee under a power in the mortgage. The real estate was sold on the 27th of May, 1879, and purchased by L. for $1456. D., who purchased the equity of redemption in the land, on the 7th of September, 1878, under an execution issued against S., the mortgagor, appeared in the proceedings under the mortgage, and filed exceptions to the ratification of the sale. Before these exceptions were filed, H., the mortgagee, not having realized from the sale of the land enough to satisfy the mortgage, advertised and sold the personal property on the 9th of June, 1879, except a number of articles included in the mortgage, which had been previously disposed of by S., the mortgagor. The proceeds of sale of the personal property, as reported by H. amounted to $221.50, subject to certain expenses paid by him. On the 11th of August, 1879, the sale of the real estate was set aside, and there upon D. filed a petition asking that an audit be made showing the balance due on the mortgage; an order was passed by consent, referring the case to the auditor, who after taking proof, stated two accounts. To the second account D. excepted, first, because H., the mortgagee, was charged therein with only the sum of $221.50, the amount for which the personal property sold at Corrigansville, whereas as the mortgage provided that the property should be sold in Cumberland, the sale of it at another place amounted to an unlawful conversion of the same by the mortgagee, and he should be charged with the full value of the property, which according to

the testimony of D., was $400. Second, because the exceptant being a subsequent purchaser of the real estate, subject to the mortgage debt of H. was entitled to have said lien marshalled, first upon the personal property in said mortgage, which ought to be credited on the mortgage to the extent of $400, for the reason set out in the first exception; and for the further reason that the mortgagee, after the purchase by the exceptant of the real estate, allowed the mortgagor to squander, &c., the personal property, after notice given him by the exceptant that such was being done. Third, because the sum of $62, was not credited therein on said mortgage debt, although sworn to by the exceptant, and not contradicted by any one; and because L. was allowed the sum of $90, for keeping the stock and personal property of the mortgagor. HELD:

1st. That as D., the exceptant was not a party to the contract of mortgage, he could not be heard to urge as an objection, that the personal property was sold at a different place from that prescribed in the mortgage.

2nd. That such a departure from the terms of the mortgage, made with the consent of the mortgagor, did not entitle the exceptant to insist that the whole value of the personal property should be credited upon the mortgage debt.

3rd. That the proposition that such departure from the terms of the mortgage operated as a wrongful conversion by the mortgagee, was not supported by reason or authority.

4th. That the exceptant could not rightfully complain that before the sale, some of the property was disposed of, or appropriated by the mortgagor to his own use, by the consent of the mortgagee, as it was competent for the mortgagee, if he had chosen to do so, to relinquish entirely his lien on the personal property.

5th. That the doctrine of marshalling of securities in equity had no application.

6th. That the real and personal property being mortgaged to secure the same debt, and the former having been sold, and the proceeds received by the mortgagee, the exceptant had the right to insist that whatever sum was thus actually received and retained by the mortgagee should be credited upon the mortgage debt; not upon the principle of marshalling, but because such receipt operated *pro tanto* as payment or satisfaction.

Dirks *vs.* Humbird.

7th. That the sum of $90, which the proof showed was a reasonable charge for keeping the stock, &c., of the mortgagor before the sale, was a proper expense to be allowed.

8th. That the exceptant was not entitled to have the sum of $62, credited on the mortgage debt;—such sum being due by the mortgagee on his private account, to the mortgagor, could not, without some agreement between the mortgagor and mortgagee, be appropriated as a credit to the former on the mortgage debt.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court.

The cause was submitted on briefs to BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*William Brace* and *Benj. A. Richmond,* for the appellant.

*William M. Price,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The facts shown by the record are as follows: John B. Smissing, to secure a debt of $1400 due Jacob Humbird, on the 9th day of June, 1877, executed a mortgage conveying all his real estate, and certain personal property consisting of horses, cattle, farming utensils, &c.

The mortgaged property remained in the possession of the mortgagor until it was sold by the mortgagee, under a power in the mortgage. The real estate was sold on the 27th day of May, 1879, and purchased by Henry Logsdon for $1456.

Paul Dirks, the appellant, having become the purchaser of the equity of redemption in the land, under an execution issued against Smissing, the mortgagor, appeared in the proceedings under the mortgage, and excepted to the

ratification of the sale. Before these exceptions were filed Humbird, not having realized from the sale of the land enough to satisfy the mortgage, advertised and sold the personal property on the 9th day of June, 1879. Before this sale took place a number of articles included in the mortgage had been disposed of by Smissing. The sale of the personal property was reported by Humbird, the report showing the proceeds of sale to be $221.50, subject to certain expenses paid by him.

On the 11th day of August, 1879, the sale of the real estate was set aside. Whereupon Dirks, the appellant, filed a petition praying that an audit be made showing the balance due on the mortgage, and an order was passed by consent referring the case to the auditor, who, after taking proof, stated two accounts. To the *second*, called the *"Auditor's Special Report,"* the appellant excepted; these exceptions were overruled, and from the order ratifying the *"Auditor's Special Report,"* this appeal was taken.

The exceptions are as follows: "1st. Because the mortgagee, Humbird, is charged therein with only the sum of $221.50, the amount the personal property sold for at *Corrigansville;* whereas this exceptant contends, that as the mortgage provides that the property should be sold in Cumberland, the sale of it at another place amounted to an unlawful conversion of the same by the mortgagee, whereby he should be charged with the full value of the property, which according to Dirks' undisputed testimony was $400. 2nd. Because Dirks being a subsequent purchaser of the real estate, subject to Humbird's mortgage debt, is entitled to have said lien marshalled, first upon the personal property in said mortgage, which in this case ought to be credited on the mortgage, to the extent of $400, under the testimony, for the reasons set out in the first exception; and for the additional reason that the mortgagee, after the purchase by Dirks of the real estate, allowed the mortgagor to squander, sell and make way

with the personal property, after notice given him by Dirks, that such was being done."

"And this exceptant excepts to the auditor's special report herein for the reason that the mortgagee therein is only charged with $221.50 instead of $400, on the grounds set out in the two exceptions above stated; and second, because the sum of $62 is not credited therein on said mortgage debt, although sworn to by Dirks and uncontradicted by any body; and *third,* because Henry Logsdon is therein allowed the sum of $90 for keeping the stock and personal property of said Smissing mortgaged herein; whereas this exceptant contends, that said claim is not a preferred one and cannot be allowed as a lien on the fund arising by the sale of said property."

As to the sale of the property, by the mortgagee, at a different place from that prescribed in the mortgage. The appellant not being a party to the contract, cannot be heard to urge this objection. It cannot be maintained that such a departure from the terms of the mortgage, made with the consent of the mortgagor, entitles the appellant to insist that the whole value of the personal property, mentioned in the mortgage, shall be credited upon the mortgage debt. The proposition that it operated as a wrongful conversion by the mortgagee is not supported by reason or authority. Nor can the appellant rightfully complain that before the sale, some of the property was disposed of or appropriated by the mortgagor to his own use, by the consent of the mortgagee. It was competent for the mortgagee, if he had chosen to do so, to relinquish entirely his lien on the personal property; the appellant would have no right to complain, he is a stranger to the transaction. The doctrine of marshalling securities in equity has no application here. It is correctly stated in 1 *Jones on Mortgages, sec.* 737, that "the principles of equity in regard to the marshalling of securities are not applicable to the case of a mortgagee

and a subsequent purchaser of the equity of redemption, but are confined to cases where two or more persons are creditors of the same debtor, and have successive demands upon the same property, the one prior in right having other securities. The purchaser takes what he purchases—the equity of redemption, and nothing more. He acquires no equitable interest in other securities held by the mortgagee, and he has no right to have the mortgage debt charged upon the mortgagor personally in exoneration of the land."

We refer also to 1 *Story's Eq. Juris.*, sec. 642, and 10 *Md.*, 528. The real and personal property being mortgaged to secure the same debt, and the former having been sold, and the proceeds received by the mortgagee, the appellant has a right to insist that, whatever sum was thus actually received and retained by the mortgagee, shall be credited upon the mortgage debt; not upon the principle of marshalling, but because such receipt operated *pro tanto* as payment or satisfaction. The only question therefore is what credits is he entitled to in this case?

The proceeds of sale were $221.50; these were diminished by the sum of $90, which the proof shows was paid to Logsdon for keeping the stock and taking care of the personal property before the sale.

It appears that Logsdon, who purchased the land, went into possession and had the care and charge of the horses, cattle, &c., from November, 1878 till May 27th, 1879, and it is further proved that the sum of $90 was a reasonable charge. In our opinion this was a proper expense to be allowed; if the mortgagee had kept the stock himself during the winter, the cost and expense thus incurred by him would have been allowed without hesitation—and the same reason applies where he has paid another person for rendering the same service.

The only remaining question upon the exceptions, relates to the credit of $62, claimed by the appellant.

Dirks *vs.* Humbird.

It appears that Smissing, the mortgagor, had a private account against the appellee for that amount. That would not be a credit on the mortgage debt, unless it had been so applied by the parties to the mortgage. The credit, is claimed in this case on the testimony of Dirks, the appellant. He states that "In July or August 1877 Mr. Humbird told me that there was no cash paid (on the mortgage) that he had looked a day or two before I came there, and seen that he had received $62, or $63 worth of milk from Smissing, which was a credit on the mortgage ; this conversation was at Humbird's house ; he afterwards, after the (sheriff's) sale, made the same statement to me at Brown's office."

Supposing Mr. Dirks to be accurate in his recollection of what took place in that conversation—it amounts to no more than a statement by Humbird, that he was willing to apply as a credit on the mortgage, this amount due on his private account with Smissing. But to do so, required Smissing's consent. It does not appear that he ever consented to such an appropriation, or that the milk bill was ever in fact applied as a credit upon the mortgage debt. On the contrary, Smissing testifies that he never paid any part of the mortgage debt, principal or interest. In the absence of some agreement between Smissing and Humbird, that this milk bill should be appropriated as a credit to the former on the mortgage debt, the appellant has no right to insist on such an appropriation ; he is not in a position to plead a set-off in behalf of Smissing.

Finding no error in the order of the Circuit Court ratifying the audit, it will be affirmed with costs to the appellee, and the cause will be remanded.

*Affirmed and remanded.*

(Decided 2nd July, 1880.)